## THE CONFIDENCE. THE WESTERN LIGHT. O'BOYLE v. DOLSON-McLAUGHLIN, Inc.

(District Court, S. D. New York. December 1, 1922.)

1. Shipping ⟨⟩79—Duty of owner of steamer and of stevedores to see that barge delivering coal was not put in danger.

Where the shipping board's agents operating a steamer engaged a barge to deliver coal to the steamer and contracted with stevedores to unload it, it was the duty of the shipping board to see that the steamer was not so handled as to injure the barge as by keeping the fasts between her and the barge at the bow so tight that the barge was squeezed between the steamer and another vessel lying alongside with her stern angling out, and it was also the duty of the stevedores to see that the barge was not put in danger.

2. Shipping ⟨⟩86(2)—Strict proof of damage required when libelees not present at survey.

When neither of the libelees was present at the survey of a damaged barge, strictest proof of the character and extent of the damage should be required.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libel by Anthony O'Boyle, owner of the barge Confidence, against the steamship Western Light, her engines, etc., claimed by the United States, which brought in Dolson-McLaughlin, Inc. Decree for libelant.

Macklin, Brown, Purdy & Van Wyck, of New York City (R. F. Lenahan, of New York City, of counsel), for libelant.

William Hayward, U. S. Atty., of New York City (Horace M. Gray, of New York City, of counsel), for the Western Light.

WARD, Circuit Judge. The owner of the barge Confidence filed this libel against the steamer Western Light, and the United States, claimant, brought in Dolson-McLaughlin, Inc.

In South Brooklyn, Gowanus Canal runs into Gowanus Creek and Gowanus Creek runs into Gowanus Bay, and Gowanus Bay runs into the upper Bay of New York.

June 3, 1919, the Western Light was lying with her port side alongside a pier at the mouth of Gowanus Creek, and outside of her lay the steamer Yellowstone. Both these steamers were light, were about 425 feet long, 54 feet beam, and about 8,800 tons dead weight.

The Strachan Shipping Company, which operated the Western Light as agents for the shipping board, made a requisition for coal through the board and engaged the barge Confidence to deliver 500 tons to the steamer and contracted with Dolson-McLaughlin, Inc., stevedores, to unload it; and the Dolson-McLaughlin Company employed the steam hoister to do so.

The coal barge Leach Brothers had been coaling the steamer, and for that purpose the Yellowstone had been breasted off so that her port bow lay against the starboard bow of the Western Light and her stern angled out into the stream. Some time before 7 p. m. of June 3d the Leach Brothers, having discharged her cargo, drew out, and the Confidence, which was a wider boat, was pulled into her place without any slacking of the lines between the bows of the steamers, and Dolson-McLaughlin, Inc., discharged the coal into the Western Light's amidship bunker during the night of the 3d and early morning of the 4th.

Owing to the necessary slackness of the lines to meet the rise and fall of the tide as well as to the effect of the tide, especially of the ebb tide and of the wind from the east or southeast, or west or southwest or northwest and of the displacement waves of tugs passing up and down the creek, the steamers were sure to surge together more or less.

The Confidence, which was only two years old and in good condition, began to leak, and her master on several occasions asked those on board the Western Light, one being a man in blue uniform with stripes on his sleeve and who gave orders to those on board of her, that the lines of the steamer be slackened, and he complained also to the boss stevedore. Yet nothing was done by either.

It is perfectly clear that the barge which was a strong boat was damaged by being squeezed between the bows of the steamers. Her

bow fenders were broken, and on being pulled out she had to be taken immediately to Bush's drydock opposite the place where the steamers were lying, because she was leaking. There she was hauled out, and a survey on June 7th disclosed that she would have to be docked on high blocks so that planks on her starboard side could be replaced and considerable recaulking done. There were no fractures or any indications of a sharp blow, but oakum was spewed out, and seams on deck were twisted open.

June 5th the Western Light sailed, and on the 6th the libelant's son wrote and mailed a letter with the office address on the envelope to the captain and owners of the Western Light at the foot of Court street, Brooklyn, making claim for damages and giving notice of survey on June 7th, which letter was never returned.

The government, as claimant, gave a stipulation for the steamer and with its answer filed an exception to the jurisdiction, which was abandoned at the trial. Dolson-McLaughlin, Inc., have not taken any testimony and did not appear at the trial.

The question is: Who is responsible for the damage?

The answer of the United States denied that it had anything to do with the placing or the unloading of the barge, the same being in the sole charge of Dolson-McLaughlin, Inc.

The answer of Dolson-McLaughlin, Inc., denied that it had anything to do with the placing of the barge, the same being subject to the agents and servants of the United States shipping board and of the steamer Western Light.

After the trial the government was given leave to examine Peter J. McLaughlin, of Dolson-McLaughlin, Inc. He testified that the bows of the steamers were not touching and that they were breasted apart by a gang plank 60 feet long and 3 feet wide, fastened on bitts on each steamer at No. 2 hatch, forward of amidships. This is in direct contradiction of Collegan, third officer of and in charge of the Western Light, whose deposition was taken by the government. He testified that the bows of the steamers were brought together and their sterns left wide apart, just as the libelant's witnesses say. And McLaughlin, although he says the tide rises and falls 5 feet at this point, also says it would have no effect on these light steamers. His testimony is entitled to no weight.

[1] I think it was clearly the duty of the shipping board to see that the steamer which they were operating through the Strachan Shipping Company was not handled, while receiving the cargo consigned to her, in such a way as to injure the barge. Yet the fasts between her and the Confidence at the bow were kept so tight that she, in co-operation with the Yellowstone, squeezed and injured the barge.

Dolson-McLaughlin, Inc., stevedores, hauled the Confidence in and was under the duty of seeing that she was not put in danger. Those in charge of the steamer were also under the duty of seeing that the barge was so treated as not to be put in danger and Dolson-McLaughlin, Inc., even if an independent contractor, was subject to the orders of the officers and agents of the steamer in this respect.

[2] In view of the fact that neither the government nor Dolson-

McLaughlin, Inc., was present at the survey, the strictest proof of the character and extent of damage should be required.

There may be a decree for libelant with costs primarily against Dolson-McLaughlin, Inc., and secondarily against the Western Light.